# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Donna Heath and Andy Heath,     :
                                     :

                Plaintiffs,        :
                                     :

          v.               :       CIVIL ACTION NO.
                                     :       1:08-cv-03665-JOF

Wal-Mart Stores East, LP,     :
                                     :

             Defendant.       :
                                     :

## OPINION & ORDER

This matter is before the court on Defendant's motion for leave to file excess pages [37]; Defendant's motion for summary judgment [38]; and Defendant's motion for leave to file excess pages [53].

## I.    Background

### A.    Procedural History and Facts

Plaintiffs, Donna and Andy Heath, filed this personal injury suit against Defendant Wal-Mart Stores, Inc., on August 25, 2008, in the State Court of Cobb County, Georgia, alleging Wal-Mart was negligent in failing to remove a blue slippery liquid from the floor of its store. Plaintiff Donna Heath slipped in the liquid and sustained injuries, including a shattered knee cap. Defendant removed the suit to this court on December 1, 2008.

At approximately 12:16 p.m. on March 17, 2008, Donna Heath slipped and fell in a foreign substance at the Wal-Mart store in Cartersville, Georgia. Video surveillance footage from the store starting at 12:06 p.m. shows an African-American male coming from an aisle in housewares, across the main back aisle of the store, and turning into the aisle running between the men's department and housewares. He appears to pause at the exact area where Plaintiff Donna Heath slips ten minutes later. Plaintiffs agree that the video surveillance tape shows the African-American male entering the aisle where Donna Heath later falls with a full bottle of liquid in his hand at 12:05. *See* Plaintiffs' Statement of Facts, ¶ 7. At 12:06, the video shows this same person exiting the aisle holding the same bottle now empty. *Id.*, ¶ 8. Wal-Mart did not produce surveillance footage prior to this event at 12:06 p.m.

Donna Heath had come to the Wal-Mart with a co-worker to eat lunch at McDonald's and do some shopping. She and the co-worker walked along the main back aisle of the store and turned up the aisle between men's clothing and housewares. She had taken about one step after the turn before her right foot slipped in blueish liquid. Donna Heath testified that the liquid was blue and covered five or six tiles on the floor. As a result of the fall, Donna Heath's patella was shattered so severely that it had to be removed.

At the time of the incident, Wal-Mart employee Carolyn Pettus was working in the men's department. When she heard Donna Heath cry out, she ran over to her. Wal-Mart employee Shirley Gunn was working in the fitting room at the time of the incident. She

AO 72A
(Rev.8/82)

testified that she did not see the fall as she was in the area of the dressing room. Ms. Gunn worked as a telephone operator and was required to be near the phone at all times. Once she heard Donna Heath yell, she left the dressing room area and moved to the scene and saw the blue liquid. Ms. Gunn further testified that around 12:05 p.m. she had returned to her dressing room station after lunch on the same aisle that Heath slipped and did not see the liquid.

Ms. Pettus was working in the area of men's clothing fixing baseball caps immediately prior to Donna Heath's fall. Although Plaintiffs assert that Ms. Pettus "walked down the aisle facing the spill with an empty cart," *see* Plaintiffs' Response to Defendant's Statement of Material Facts, ¶ 33, the video surveillance does not show Ms. Pettus approaching the area of the spill and facing the spill. The video shows Ms. Pettus at 12:13 p.m. coming down the aisle in the opposite direction that Donna Heath approached, and then turning off into the men's department area where she proceeded to "zone" a baseball cap display that was set in from the aisle. At almost 12:15 p.m., Ms. Pettus re-enters the aisle where Heath falls, but she turned up the aisle so her back was to the spill. Ms. Pettus testified that she did not see the liquid, *see* Pettus Depo., at 19, and she was working on an end cap 30-35 feet away from the area of the spill. *Id.* at 20. Ms. Pettus had her back to the aisle when she heard Heath fall. *Id.*

3

Christopher Lee, a Wal-Mart customer, came to Donna Heath's aid about 20 seconds after the fall. Mr. Lee testified that he saw a bottle of Fabuloso cleaner under the clothing fixture adjacent to the spill where Heath fell. The bottle was approximately 1/4 full. Mr. Lee testified that the spill on the floor looked and smelled like Fabuloso cleaner. Mr. Lee also identified himself on the surveillance video around 12:11 p.m. walking down the main back aisle of the store and he could not see the spill. He passed the same way at 12:15 and again did not see a spill.

It is Wal-Mart policy that "safety sweeps" are announced every hour over the loudspeaker system at the store. Employees are trained to check their area for hazards during these sweeps. "Zone defense" is also a Wal-Mart policy where employees are trained to be aware of events in their area and look out for any hazards, including foreign substances on the floor. These policies were in place on the date in question and Wal-Mart employees testified that on that date, they were instructed to "zone" their areas and safety sweeps were announced over the loudspeaker system. No written logs are kept of this activity.

**B.     Contentions**

Defendant argues it is entitled to summary judgment because Plaintiffs cannot show Defendant had actual or constructive knowledge of the hazard. Plaintiffs have provided no evidence of actual knowledge. Further, Defendant has shown that it exercised reasonable care in inspecting the premises through the testimony of employees and the existence of the

4

store's inspection policy. Defendant has also submitted evidence to show that there was no employee in the vicinity of the hazard who could have noticed it and corrected it. Plaintiffs have no evidence as to how long the hazard existed on the floor and Defendant contends that the video surveillance footage shows an individual pouring liquid on the floor only ten minutes before Donna Heath's fall. Finally, Defendant further avers that Donna Heath cannot demonstrate she exercised ordinary care.

Plaintiffs respond that Defendant did have constructive knowledge of the spill because there were employees in the area who had an unobstructed view of the aisle. Plaintiffs also contend that Defendant did not follow reasonable inspection procedures on the date in question. Finally, Plaintiffs raise an issue of spoliation because Defendants only retained the video surveillance camera footage of 11 minutes prior to Donna Heath's fall and 30 minutes after. Had Defendant retained a longer period of tape, Plaintiffs argue, it might have evidenced a failure of Defendant to adequately inspect or might have shown that the spill was on the floor for a longer period of time.

## II.     Discussion

### A.     Spoliation

Plaintiffs contend that because Wal-Mart only kept a certain portion of the video-taped surveillance camera footage, the court should apply the sanction of spoliation and draw certain inferences in favor of Plaintiffs. Defendant responds that it retained all relevant

portions of the tape showing the cause of the spill and Donna Heath's fall, and therefore, there is no issue of spoliation. Further, Defendant argues there is no evidence of bad faith on the part of Defendant and therefore, spoliation does not apply.

In an order dated October 19, 2009, the court granted in part and denied in part Defendant's motion for a protective order related to the Rule 30(b)(6) deposition of Robert Lopez, Defendant's representative who could testify as to matters relating to Wal-Mart's surveillance cameras. The court directed that the deposition take place within thirty days and granted the parties leave to file any supplemental briefs relating to the surveillance camera issue after the deposition. Both Plaintiffs and Defendant filed supplemental briefs and the court has reviewed them.

Plaintiffs' counsel sent a letter to Defendant on April 14, 2008 asking that the video surveillance tapes from the March 17, 2008, incident be preserved. *See* Letter from Kenneth Crawford (stating "I request that you save and retain all video surveillance . . . relating to this incident until this matter has been completely resolved."). The tape provided by Defendant shows 11 minutes prior to Donna Heath's fall and 33 minutes after. Defendant's counsel responded to Plaintiffs' counsel on November 17, 2008, stating that "[t]he tape is complete. I am unaware of any policy that requires the store to pull 30 minutes of footage prior to the incident. The store tries to pull video that shows the source of the alleged hazard, followed [by] the incident itself. In this case, this is exactly what the video shows.

6

Also, you can see EMT personnel removing her from the scene at 12:29 p.m.  Again, there is no other video of the fall or the scene."  *See* Letter from Albert DeCusati to Kenneth Crawford dated November 17, 2008.

At his deposition, Mr. Lopez testified that he responded to the scene of Donna Heath's fall and then went to the asset protection office to pull the video of the fall.  The video is recorded digitally and retained for thirty days.  Mr. Lopez chose to retain the period of 11 minutes before the slip and fall and 30 minutes after.  Mr. Lopez testified that he decided on this period because in viewing the video, he saw an African-American male walk over to the site of Donna Heath's fall and make "motions that he was pouring something on the floor."  *See* Lopez Depo., at 38.  He saw that man leave the site of the spill with a bottle. *Id.*

Plaintiffs theorize that because Mr. Lee apparently found a "second" mostly empty bottle of Fabuloso cleaner under the clothing rack near the spill site, there must have been a "second" and earlier spiller of the liquid.  Had Wal-Mart retained earlier footage, Plaintiffs continue, Plaintiffs would be able to show that the liquid was on the floor longer than the 11 minutes shown in the video footage when the African-American male spilled the liquid on the floor.  Plaintiffs further speculate that additional footage would show other Wal-Mart employees who had the opportunity to see the spill and failed to clean it up.  It would also

show whether Wal-Mart employee Shirley Gunn actually walked near the scene of the spill at 12:05 p.m. as she claimed.

In *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), the plaintiff sued the defendant for personal injuries he allegedly suffered as a result of a manufacturing defect in his car's airbag system. The plaintiff's counsel sent a letter to the defendant informing the company of the accident and the airbag's alleged failure to deploy. The company responded that it wanted to know the location of the vehicle so that it could be inspected. The plaintiff's counsel never responded to the company's request, and the car eventually was sold for salvage before the defendant had an opportunity to inspect it. The defendant moved to dismiss the plaintiff's case due to spoliation of the evidence. The district court applied the state law balancing test for spoliation of evidence found in *Bridgestone/Firestone North American Tire, LLC v. Campbell*, 258 Ga. App. 767, 768 (2003), and ultimately left it to the jury to decide whether the plaintiff or the defendant was responsible for the spoliation of evidence. *Id.* at 942-43. The jury eventually awarded the plaintiff $250,000 in damages.

On appeal, the Eleventh Circuit first held that "federal law governs the imposition of spoliation sanctions . . . because spoliation sanctions constitute an evidentiary matter." *Id.* at 944. But the court also noted that its opinion is "informed" by Georgia law because

AO 72A
(Rev.8/82)

federal law in the Eleventh Circuit did not set forth specific guidelines on spoliation. *Id.*
The court also found that Georgia state law on spoliation was consistent with federal law.

The court then articulated that "sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process. Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Id.* (quotations and citations omitted). The court, however, determined that only dismissal would suffice in this case because the plaintiff knew the location of the vehicle for a long period of time after the accident. The plaintiff was also aware that the defendant wanted to examine the vehicle, but ignored that request and allowed the vehicle to be sold for salvage. *Id.* Furthermore, the court found that "[e]ven absent defendant's unambiguous request for its location, plaintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case. Plaintiff's failure to preserve the vehicle resulted in extreme prejudice to the defendant, and failure to respond to defendant's letter displayed a clear dereliction of duty." *Id.*

The court then went on to consider the district court's application of Georgia spoliation law. To determine whether spoliation has occurred, a Georgia court addresses five factors: (1) prejudice to the non-spoliating party as a result of the destruction of evidence, (2) whether the prejudice is curable, (3) the practical importance of the evidence,

9

(4) whether the spoliator acted in good or bad faith, and (5) potential for abuse of expert testimony about evidence was not excluded. *Bridgestone/Firestone North American Tire, LLC v. Campbell*, 258 Ga. App. 767, 768 (2003). As sanction for spoliation of evidence, a court may (1) dismiss the case, (2) exclude expert testimony, or (3) issue a jury instruction on spoliation of evidence which raises a presumption against the spoliator. *See*, *e.g.*, *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 540 (1996). The *Flury* court disagreed with the trial court's failure to impose any strong sanction because the defendant lost (1) the best evidence of the vehicle's impact speed, (2) the ability to analyze the airbag control module to determine whether it malfunctioned, and (3) the opportunity to determine whether the airbag remained in the same condition as when sold. "[D]irect examination of the vehicle's condition was critically important to this case." *Id.* at 946. The court also stated that "Georgia law does not require a showing of malice in order to find bad faith." *Id.* Rather, the court "should weigh the degree of the spoliator's culpability against the prejudice to the opposing party. *Id.* *See also Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997); *Walker v. I.R.S.*, 2009 WL 1241929 (N.D. Ga. Feb. 26, 2009) (Murphy, J.) (noting that adverse inference can only be drawn in instances of bad faith and that Georgia does not require evidence of malice to find bad faith, although "mere negligence" is not sufficient as "it does not sustain an inference of consciousness of a weak case").

In sum, the court found:

10

> We believe the extraordinary nature of plaintiff's actions coupled with extreme prejudice to the defendant warrants dismissal. Plaintiff failed to preserve an allegedly defective vehicle in a crash worthiness case. The vehicle was, in effect, the most crucial and reliable evidence to the parties at the time plaintiff secured representation and notified defendant of the accident. By the time plaintiff filed suit . . . plaintiff had allowed the vehicle to be sold for salvage despite a request from defendant for the vehicle's location. For these reasons, we believe the resulting prejudice to the defendant incurable, and dismissal necessary.

*Id.* at 943.

Applying *Flury*, the court finds that the prejudice to Plaintiffs here is not as severe as it was to the defendant in *Flury*. Unlike a situation where an airbag improperly deploys and the parties will use experts to analyze the actual car and determine what caused the failure, here, how the liquid got on the Wal-Mart floor is only part of the puzzle concerning Plaintiffs' negligence cause of action. Neither party will use experts in this litigation.

Further, Wal-Mart did not act in malice to destroy the surveillance tapes. In accordance with company policy, Mr. Lopez reviewed the tapes and saw what he determined to be the cause of the spill. He then retained that portion of the video through to Donna Heath's fall. There is no evidence that Mr. Lopez did not diligently search the tapes or that he should have been aware of a possible alternative cause of the spill. At the time Mr. Lopez secured the tape, Mr. Lee had not informed anyone at Wal-Mart that he had seen a potential "second" bottle of Fabuloso under the clothing rack near where Donna Heath fell. There is nothing in the record from which it could be inferred that Wal-Mart only gave a

11

certain portion of the surveillance tape because it fear it had a weak case. To the contrary, at the time the tape was pulled Wal-Mart believed it had documented the source of the liquid. Finally, there is nothing in the record which conclusively demonstrates that had Wal-Mart retained a greater segment of the tape, Plaintiffs would be able to prove a "second spiller" existed. She merely speculates as to the existence of such a person.

In considering where culpability lies, as the court explained above, at the time Plaintiffs' counsel wrote his letter requesting Wal-Mart retain the video, Wal-Mart had already retained the portion it believed to be relevant. At that time, there was no information available to either party which indicated any need to retain a longer portion of the video. The court has reviewed the entire video and there is no doubt that 11 minutes prior to Donna Heath's fall, an individual stoops down and appears to dump liquid on the floor at the site of Heath's fall. The court finds no culpability in Wal-Mart's decision, based on the information it had at the time, in retaining the tape starting at 11 minutes prior to Donna Heath's fall. The court finds no reason, then, to bar any defenses or exclude expert testimony. The court notes, however, that the state of the tape may affect inferences the court could draw on Defendant's summary judgment motion on Plaintiffs' negligence claim. The best arguments Plaintiffs make on this front are that there is (1) no way to independently verify Ms. Gunn's testimony that she checked the floor in the area around 12:05 p.m. because Wal-Mart did not retain that portion of the tape and (2) the possibility of a "second

12

spiller" due to the bottle of Fabuloso found by Mr. Lee under the clothing rack near the location of Plaintiff's fall.

### B.    Negligence Claim

To recover for injuries sustained in a slip and fall action under Georgia law, a plaintiff must prove (1) that the defendant had either actual or constructive knowledge of the hazard and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the defendant's control.  *See Robinson v. Kroger Co.*, 268 Ga. 725, 748-49 (1997); *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 623 (1980).  A plaintiff can show a defendant's constructive knowledge if the plaintiff can demonstrate (1) an employee was in the vicinity and could have easily seen and removed the hazard or (2) the hazard was present long enough that it would have been discovered through an inspection taken with reasonable care.  *See*, *e.g.*, *Watkins v. Home Depot U.S.A., Inc.*, 259 Ga. App. 168, 169 (2002); *Roberson v. Winn-Dixie Atlanta, Inc.*, 247 Ga. App. 825, 825-26 (2001).

As to the plaintiff's exercise of ordinary care, the

Supreme Court of Georgia has disapproved "appellate decisions which hold as a matter of law that an invitee's failure to see before falling the hazard which caused the invitee to fall constitutes a failure to exercise ordinary care.... Demanding as a matter of law that an invitee visually inspect each footfall requires an invitee to look continuously at the floor for defects, a task an invitee is not required to perform ( [cit.] ), since the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the

premises safe for the invitee and continues to exercise such care while the invitee remains on the premises."

*Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 517 (1998) (citing *Robinson*, 268 Ga. at 743).

*See also Jones v. Ingles Markets, Inc.*, 231 Ga. App. 338, 341 (1998) (noting that while it is possible for court to conclude as matter of law that invitee failed to exercise ordinary care, question of ordinary care "is generally an issue for the trier of fact and that where reasonable minds can differ as to the conclusion to be reached, summary judgment is not appropriate"). The court, therefore, will not find on Defendant's motion for summary judgment that Donna Heath failed to exercise ordinary care.

Because absent evidence from the defendant that the plaintiff knew of the hazard or in the exercise of ordinary care should have known, Georgia courts frown upon a finding that the plaintiff failed to exercise ordinary care, the court focuses on whether the plaintiff can show that the defendant had either actual or constructive notice of the hazard. Because the plaintiff bears the burden of demonstrating actual or constructive knowledge, "the defendant may prevail on summary judgment by simply pointing out the absence of evidence in the record that the defendant had actual or constructive knowledge of the hazard." *Jones v. Ingles Markets, Inc.*, 231 Ga. App. 338, 340 n.1 (1998). There is no testimony in this case that Defendant had actual knowledge and therefore, the court looks to whether Plaintiffs can show Defendant had constructive knowledge of the hazard by demonstrating either (1) an employee was in the vicinity and could have easily seen and

14

removed the hazard or (2) the hazard was present long enough that it would have been discovered through an inspection taken with reasonable care.

Georgia courts set a high bar as to whether an employee was in the vicinity and could have easily seen and removed the hazard. For example, in *Warberg v. Saint Louis Bread Company*, plaintiff Warberg slipped and fell on a plastic "Wet Floor" sign that was lying flat on the floor, rather than in its proper upright position. 255 Ga. App. 352, 352 (2002). Mrs. Warberg fell while moving toward the counter to place her order, yet an employee working behind the counter did not actually observe the accident, and only looked up when another customer mentioned the accident. *Id*. The employee stated that she had not previously seen the hazardous sign in the area of Mrs. Warberg's fall, despite being in a position to view the hazard, as the store was crowded and the counter blocked her view. *Id*. Other employees testified that in the immediate fifteen to twenty minutes before the accident, they had viewed the area and had not seen the sign lying flat on the floor, but rather had seen it upright variously against a wall or in the location of the accident. *Id*. at 352-53. In refusing to impute constructive knowledge, the *Warberg* court stated that not only must the employee be in the vicinity, but additionally there must be a finding that defendant's employee had the opportunity to discover and remove the hazard, "which can only be shown by evidence that the hazard existed for a length of time sufficient for defendant to discover the hazard and remove it." *Id*. at 355. *See also Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 828 (1997)

15

(showing that "employee [was] merely working in the immediate area of a foreign substance is not enough; the employee must have been in a position to have easily seen the substance and removed it"); *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1999) (where employee was working in cheese section and not facing area in which fall occurred and showcase blocked her view of the area, plaintiff could not show employee could have easily seen foreign substance and removed hazard); *Hopkins v. Kmart Corp.*, 232 Ga. App. at 518-19 (holding that cashier at nearby register could not have seen hazard in aisle from where she was standing and rejecting as "pure speculation" idea that cashier should have heard "smash" of bottle breaking on floor).

  To demonstrate that a Wal-Mart employee was in the vicinity and had the opportunity to discover the spill, Plaintiffs state that Carolyn Pettus was working in the area of men's clothing fixing baseball caps immediately prior to Donna Heath's fall. Plaintiffs further state that Ms. Pettus walked down the aisle facing the spill with an empty cart around which she could have seen the hazard. As the court stated above, however, Ms. Pettus did not approach the area and face the spill, rather the surveillance video shows that at 12:13 p.m., Ms. Pettus comes down the aisle in the opposite direction that Donna Heath approached. She then turns off into the men's department to work on a baseball cap display that is set some distance in from the aisle. At almost 12:15 p.m., Ms. Pettus re-enters the aisle where the fall occurred, but turns away from the liquid spill and still had her back to the aisle when

she hear Donna Heath's cries from falling. The court finds this situation closer to *Warburg*, *Coffey*, *Lovins*, and *Hopkins* and concludes that Plaintiffs have not presented sufficient evidence from which a jury could conclude that a Wal-Mart employee was working in the vicinity and had the opportunity to discover the spill.

Even if Plaintiffs cannot demonstrate that an employee was in the position to have easily seen and removed the foreign substance, Plaintiffs can still show constructive knowledge by demonstrating that the hazard was present long enough that it should have been discovered through an inspection taken with reasonable care. In *Matthews v. The Varsity,* 248 Ga. App. 512 (2001), a woman slipped and fell while descending stairs within the restaurant and alleged there was liquid on the stair step. *Id.* at 512. The evidence in the case showed that an employee had made an inspection of the site of the slip-and-fall accident five minutes earlier and had found no hazardous substances on the stairs where the fall occurred. *Id.* at 512, 514. The *Matthews* court held that when a defendant can demonstrate that an inspection occurred within a brief period before the plaintiff's fall, that inspection procedure will be held adequate as a matter of law. *Id.* at 514; *see also Warberg*, 255 Ga. App. at 353, 356 (applying *Matthews* and holding adequate as a matter of law inspections occurring fifteen to twenty minutes before the accident).

Certain Georgia cases have held that a store owner is not liable for failing to discover a hazard that has not been present for more than 10 or 15 minutes. *See*, *e.g.*, *Coffey v. Wal-*

17

*Mart Stores, Inc.*, 224 Ga. App. 824, 828 (1997); *Jester v. Ingles Markets, Inc.*, 206 Ga. App. 327, 328 (1992); *Smith v. Winn-Dixie Atlanta, Inc.*, 203 Ga. App. 565, 566 (1992); *Mallory v. Piggly Wiggly S., Inc.*, 200 Ga. App. 428, 430 (1991); *Mazur v. Food Giant, Inc.*, 183 Ga. App. 453, 454 (1987).

Plaintiffs, here, argue that there is a dispute of fact as to how long the liquid was on the floor before Donna Heath slipped in it. Plaintiffs contend that because Mr. Lee found a nearly empty bottle of Fabuloso under the clothing rack near Donna Heath's fall, that the individual seen on the video surveillance was not the only "spiller" and there was a "second spiller" who had dumped liquid in the area and left the bottle under the rack ***before*** the individual seen on the video does so. The only evidence Plaintiffs proffer for this theory is the second, almost-empty bottle of Fabuloso under the clothing rack. Plaintiffs offer no evidence, however, to show how long that bottle was there and whether it was associated with any spill at all, let alone any spill that occurred near the time frame of Donna Heath's fall. Furthermore, Mr. Lee identified himself on the surveillance tape which showed him passing the area around 12:11 p.m. and again at 12:15 p.m. and he stated he did not see any spill.

In a slip and fall case, Georgia courts recognize that "an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1999). In *Medders v. Kroger*

18

*Co.*, 257 Ga. App. 876 (2002), the plaintiff slipped and fell in a spill of Pine-Sol liquid on the floor of a grocery store aisle. An employee testified that she had walked up that same aisle 5-10 minutes before the plaintiff fell and had not noticed a spill. On cross-examination in her deposition, the employee admitted that it was "possible" the spill could have been there, but she had been looking at the floor as she walked up the aisle and did not see it. The court stated that the employee's "acknowledgment that something is 'possible' is mere speculation. For an inference to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility. Likewise, any conjecture that Wallis did not see the Pine-Sol because she was in a hurry is not sufficient to raise an issue of fact in light of her direct evidence that she was looking for hazards as she walked down the aisle and the Pine-Sol was not on the floor at that time." *Id.* at 878 (citations omitted). *Cf. Dix v. Kroger Co.*, 257 Ga. App. 19 (2002) (jury question where employees were physically capable of seeing grapes spilled on floor of produce section had they looked, as opposed to situation where employees' line of sight was blocked or obstructed).

In *Hopkins v. Kmart Corp.*, 232 Ga. App. 515 (1998), the plaintiff slipped in a pool of liquid at a check-out aisle which apparently came from a broken bottle of iced tea that fell out of a display near the aisle. There was no evidence concerning when the spill happened, but the Kmart manager testified that he inspected the check-out lanes every 30 minutes and

19

had checked the aisle where the plaintiff fell 30 minutes before her fall. The court also noted there was "evidence that Kmart trained its employees on safety procedures and advised cashiers to keep their lanes neat and clean." *Id.* at 517-18. The court found this testimony was sufficient to carry the defendant's initial burden of showing it exercised reasonable care in inspecting the premises. *Id.* The court then stated that it became the plaintiff's burden to show "that the substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant." *Id.* at 518 (quotation and citation omitted). "The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case (i.e.,) the nature of the business, size of the store, the number of customers, the nature of the dangerous condition and the store's location." *Id.*

Ultimately, the court concluded that:

[The plaintiff] admitted that she had no knowledge of the length of time the hazard was in existence. However, it is clear that the hazard was not present 30 minutes before the fall when the store manager inspected the area and found no hazard. Thus, there was some evidence of the length of time the hazard had existed. But, in the absence of evidence that a reasonable inspection would have discovered the foreign substance, no inference can arise that defendant's failure to discover the defect was the result of its failure to inspect. Given the volume of customers Kmart had on the day of the incident and its compliance with reasonable inspection procedures, [the plaintiff] has established no inference that the failure to discover the iced tea and broken bottle was a result of Kmart's failure to inspect. Accordingly, [the plaintiff] failed to show that Kmart failed to exercise reasonable care in inspecting the premises.

AO 72A
(Rev.8/82)

*Id.* at 518.

Defendant has proffered the testimony of numerous Wal-Mart employees describing the store's inspection policies of "zoning" and hourly announcements over the store's loudspeaker instructing employees to check their areas for hazards. Plaintiffs have offered no evidence to dispute this testimony and therefore the court concludes that on the day in question, Wal-Mart had reasonable inspection policies in place.

To show that the liquid was not on the floor for longer than fifteen minutes, Wal-Mart points to the testimony of Shirley Gunn who stated that she walked up the aisle at 12:05 p.m. and did not see any liquid on the floor. Plaintiffs, however, argue that they have no means of contesting Ms. Gunn's statement because Wal-Mart did not retain footage prior to 12:05 p.m. Plaintiffs further state that the video surveillance footage does not show Ms. Gunn walking up the aisle at 12:05 p.m. as she testified. However, as Plaintiffs, themselves, pointed out, the surveillance tape starts right at 12:05 or 12:06 and there is no testimony that Ms. Gunn's watch or her recollection of the event would be timed to match that of the clock on the surveillance camera. The court finds that Plaintiffs' argument that Ms. Gunn did not check the aisle as she testified is only speculation and no reasonable jury could draw that conclusion based on the evidence. While it is true that Plaintiffs cannot look at the surveillance video to test Ms. Gunn's statements, this is often the case in litigation that there can be no independent verification of a witness's testimony. This does not mean, however,

that a party cannot rely on that testimony. Plaintiffs have offered nothing more than speculation to contest Defendant's evidence that Wal-Mart had an inspection policy in place on the date of the incident.

The court finds the video surveillance tape clearly shows that at 12:05-06 p.m., an individual pauses in the same area where Donna Heath later falls, appears to spill liquid out of a container he is holding, and then leaves the aisle returning to where he had come with the now empty bottle. There can be no dispute that this individual poured liquid on the floor approximately ten minutes before Donna Heath falls.

Plaintiffs do not dispute this, but in order to get around the "fifteen minute" rule generally established in Georgia law,[1] Plaintiffs argue that there must have been a spill in the same location prior to this spill because Mr. Lee saw a near-empty bottle of Fabuloso under a clothing rack near where Donna Heath fell when he came to her aid. As the court pointed out above, however, this theory is speculative. Plaintiffs have no evidence to support it and even if they had a longer segment of video surveillance tape, there is no certainty that they would find additional evidence on that tape. Plaintiffs have no idea how long the "second" bottle of Fabuloso was under the clothing rack. The mere existence of that bottle is not enough for the jury to conclude that a "second spiller" acted and the

---

[1]*See, e.g.*, *Bolton v. Wal-Mart Stores, Inc.*, 257 Ga. App. 198, 198 (2002) (no liability where floor clear of substance 10-15 minutes prior to plaintiff's fall); *Mazur v. Food Giant, Inc.*, 183 Ga. App. 453 (1987).

AO 72A
(Rev.8/82)

original spill must have been on the floor for longer than the ten minutes shown in the video surveillance camera. Plaintiff proffered no evidence as to how the "second" bottle of Fabuloso got under the clothing rack, what happened to the contents of this "second" bottle, or even whether the contents ended up in the aisle. The only evidence in the record is the video surveillance which clearly shows an individual pouring a liquid on the floor in the area where Plaintiff fell at 12:05-06 p.m.

Because Defendants have shown they had an inspection policy in action on the date of the incident and Plaintiffs cannot show that (1) an employee was in the vicinity and could have easily seen and removed the hazard or (2) the hazard was present long enough that it would have been discovered through an inspection taken with reasonable care, Plaintiffs cannot demonstrate that Defendant had constructive knowledge of the spill and cannot succeed on their negligence claim. Therefore, the court GRANTS Defendant's motion for summary judgment on negligence, and thereby also Plaintiffs' derivative loss of consortium claim.

## III. Conclusion

The court GRANTS Defendant's motion for leave to file excess pages [37]; GRANTS Defendant's motion for summary judgment [38]; and GRANTS Defendant's motion for leave to file excess pages [53].

AO 72A
(Rev.8/82)

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiffs'

complaint.

**IT IS SO ORDERED** this 10th day of March 2010.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)